UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

---

BETTY WILLIAMS,                          )
                                         )
                    Plaintiff,           )
         v.                              )
                                         )        Civil Action No. 01-1098 (AK)
                                         )
MEL MARTINEZ, *et al.*,                  )
                                         )
                    Defendants.          )

---

## MEMORANDUM OPINION

Pending before this Court is Defendant Parkside Townhomes Condominium Association, Inc.'s Motion to Set Aside Judgment and Quash Writ of Execution and Memorandum in support thereof (collectively, the "Motion") [34] and Plaintiff Betty William's Opposition to the Motion ("Opposition") [35].  Defendant Parkside Townhomes Condominium Association, Inc. ("Parkside" or "Defendant") moves this Court to "set aside the entry of default filed on June 7, 2002, vacate the default judgment entered . . . on November 14, 2003, and quash the writ of execution [from 2015]." (Motion at 1.)  For the reasons set forth herein, this Court declines to vacate the default judgment. A separate Order accompanies this Memorandum Opinion.

## BACKGROUND

On May 21, 2001, Plaintiff Betty Williams ("Williams" or "Plaintiff") filed a *pro se* Complaint [1] against Defendant Parkside, alleging that there were "numerous structural problems, including the roof, [and problems with the] exterior insulation and finish, and the appliances" in her unit within the Defendant's condominium association, where such units were constructed with funds from the United States Department of Housing and Urban Development ("HUD").

(Complaint [1] ¶¶2, 9.)[1] Plaintiff asserted that she had tried to get "the structural defects in her house . . . corrected" but that no action had been taken. (Complaint [1] ¶15.)[2] On September 18, 2001, Plaintiff filed a Return of Service/Affidavit, which was allegedly executed on September 15, 2001 upon Kenneth Postell, as an agent of Parkside. (Return of Service [2].)

Because Defendant Parkside never filed an answer or otherwise responded to Plaintiff's Complaint, the Clerk's Office entered a Default [22] against Parkside on June 7, 2002.[3]  On May 12, 2003, Williams filed a Motion for Default Judgment [24] against Parkside. On August 26, 2003, Plaintiff, through counsel,[4] participated in an evidentiary hearing regarding her Motion for Default Judgment and the Court ordered that Plaintiff submit a memorandum on the relief sought and supplement her repair estimates within 30 days. *See* 8/26/03 Docket Entry.[5] On September 25, 2003, Williams filed an affidavit and attachment in response to the Court's Order. (Notice of Filing

---

[1] Plaintiff also named Mel Martinez, Secretary of the U.S. Housing and Urban Development ("HUD") as a Defendant in this case alleging violations of the National Housing Act, 12 U.S.C. §1701; Title VIII of the Civil Rights Act of 1968 (Fair Housing Act), 42 U.S.C. §3601, *et seq.*; the Fifth Amendment; and the Mandamus Act, 28 U.S.C. §1361. (Complaint [1] ¶¶1-2.) HUD's Motion to Dismiss the Complaint [20] was granted by the Court on June 25, 2002, on grounds that it was unopposed. (Order [23].)

[2] In Paragraph 13 of her Complaint, Plaintiff described in more detail the problems that were noted by Home Inspectors from Sears Home Inspection Service and the District of Columbia Department of Consumer and Regulatory Affairs. (Complaint [1] ¶13.)

[3] A corrected Default [25] against Parkside Condominium Townhome Association was entered by the Clerk on July 22, 2003.

[4] Counsel entered his appearance on August 26, 2003. (Attorney Appearance [26].)

[5] Plaintiff's home inspection reports from Sears Home Inspection Services and the District of Columbia Department of Consumer and Regulatory Affairs, submitted in support of her motion for default judgment, indicated "numerous serious defects in the heating and cooling systems, which could lead to carbon monoxide poisoning, fire, or an explosion" and "a number of serious structural problems, including water seepage and damage resulting therefrom." (11/14/03 Memorandum Order [28] at 3 n.3.)  Plaintiff also submitted an inspection report from Home Survey Company, Inc. a licensed HUD contractor, which estimated the cost of doing some of the home repairs. (*Id.* at 3-4.)

[27].)[6]  The Court issued a Memorandum Order [28] on November 14, 2003, granting in part and denying in part Williams' request for a default judgment against Parkside, directing that Plaintiff was entitled to a judgment totaling $65,910.00 and costs of $222.00. (Memorandum Order [28] at 6.)

It was not until almost twelve years later that Plaintiff filed several Writs of Execution and a Writ of Attachment on Judgment.[7] *See* docket entries [30], [32], [33] & [36], dated October 19, 2015 through November 9, 2015.[8]  On November 6, 2015, Defendant Parkside filed the instant Motion to Set Aside the Default Judgment and Quash Writ of Execution [34], alleging that Mr. Kenneth Postell was not served with the Summons and Complaint and further, that he was not an Officer/Director of Parkside at the time of such alleged service. *See* Affidavit of Kenneth Postell [34-1].  This Court held an evidentiary hearing with regard to the instant Motion, commencing on November 23, 2015, continuing on December 14, 2015 and January 12, 2016, and terminating on March 10, 2016.   During the evidentiary hearing, the following witnesses with information relevant to this case testified: Kenneth Postell (former member of the Board of Directors of Parkside); Benny Kass, Esq. (registered agent of Parkside); Wanda Taylor (current Secretary of the Board of Directors of Parkside); Benjamin Colbert (Metropolis Management company representative); Brian Kass, Esq. (attorney and custodian of records of the law firm representing Parkside); Victor Booth (former member of the Board of Directors for Parkside); and Betty

---

[6] Plaintiff submitted a home inspection report from Kendria Construction Company, which provided an estimated cost for repairs.  (11/14/03 Memorandum Order at 4-5.)

[7] Under District of Columbia law, "every final judgment . . . for the payment of money rendered in the [ ] United States District Court for the District of Columbia. . . is enforceable, by execution issued thereon, for a period of twelve years . . . ."  D.C. Code Ann. §15-101 (West 2001).

[8] On September 24, 2015, Attorney Johnnie D. Bond entered his appearance as Plaintiff's counsel.

Williams (Plaintiff). Plaintiff and Defendant both submitted exhibits which were entered into evidence.

## LEGAL STANDARD

Parkside moves for relief from the default judgment pursuant to Federal Rules of Civil Procedure 55(c) and 60(b).  Fed. R. Civ. P. 55(c) permits the court to set aside a final default judgment under Rule 60(b). Fed. R. Civ. P. 60(b) states that "[o]n motion and just terms, the court may relieve a party . . . from a final judgment, order, or proceeding for the following reasons:  . . . (4) the judgment is void. . . ." Fed. R. Civ. P. 60(b)(4). A judgment may be considered void in the event that requirements for effective service have not been satisfied.  *See Combs v. Nick Garin Trucking*, 825 F.2d 437, 441-42, 448 (D.C. Cir. 1987) (holding that a default judgment must be vacated under Rule 60(b)(4) upon finding that a defendant was not properly and effectively served with process); *MCI Telecommunications Corp. v. Travel Specialist*, 1991 WL 197029, *1 (D.D.C. Sept. 17, 1991) (holding that "[i]nvalid service of process invalidates a default judgment").

Generally, "the decision whether a default judgment should be set aside is committed to the sound discretion of the trial court." *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980). In contrast, "'[t]here is no question of discretion on the part of the court when a motion is [brought] under Rule 60(b)(4);' if the judgment is void, relief is mandatory." *Combs*, 825 F.2d at 441.  "[T]the general trend throughout the Circuits . . . is toward imposing the burden of proof on the party moving to vacate a default judgment under Rule 60(b)(4)."  Ariel Waldman, *Allocating the Burden of Proof in Rule 60(b)(4) Motions to Vacate a Default Judgment*, 68 U.Chi.L.Rev. 521, 533 (2001). A movant attacking a default judgment under Rule 60(b)(4) bears the burden of demonstrating that the judgment is void.  *Combs*, 825 F.2d at 441-42.

4

## ANALYSIS OF PARKSIDE'S MOTION

Parkside challenges the default judgment on grounds that the judgment was void because: 1) the service of process was defective and 2) Kenneth Postell, the individual allegedly served, was not an officer or director of Parkside at the time of the alleged service and thus, he was not authorized to accept service.  (Motion at 4.)

### A. **Was Service Effective?**

The signed and dated Return of Service relating to Kenneth Postell states as follows:

I, Kimberly Trent, hereby certify that I have served a Summons by placing same in the hands of Kenneth Postell[e], who is an agent for Parkside Condo Assn located at the following address: 3727 Grant Pl N.E. (Mr Postelle Read [the] Summons, and Walk[ed] Out [of the] house and Returned to Service wind[d]shield.[)] The date of service was: 9-15-01[.] The time of service was: 9:20 A.M. I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service is true and correct.

(Return of Service [2].)

As a preliminary matter, Parkside notes that the "Return of Service against Parkside does not provide any description of Mr. Postell . . . [and it] [f]urther . . . indicates that only the Summons was allegedly served upon him and not a copy of the Complaint in violation of [Rule] 4(c)(1) of the Federal Rules of Civil Procedure."  (Motion at 4 n.1.)  Fed. R. Civ. P. 4(l)(1), governing proof of service, requires only that "proof must be by the server's affidavit."  Fed. R. Civ. P. 4(l)(1).  The affidavit of service does not require any "substantive description of how the summons and complaint were served," nor does it require a description of the person to be served. *See generally Lopes v. JetsetDC, LLC*, 994 F. Supp. 2d 135, 145 (D.D.C. 2014) (holding that "an affidavit's failure to describe the service of process itself" is not grounds for quashing the service of process). Defendant's contention that the Return was defective for failing to describe Mr. Postell is therefore without merit.

5

Defendant correctly notes that Rule 4(c)(1) requires that a Summons be served with a copy of the Complaint; however, this District Court has previously treated ambiguous returns of service as insufficient to rebut the presumption that service was proper. *See Roland v. Branch Banking & Trust Corp.*, No. 15-0040, 2015 WL 8751050, at *3 (D.D.C. Dec. 14, 2015) ("Despite the lack of clarity in the process server's affidavit, in the absence of any other evidence, the Court finds Defendants have not successfully rebutted the prima facie evidence that service was proper.")[9] Moreover, this District Court has adopted a "relaxed application of the rules governing service of process to *pro se* plaintiffs." *Id.*; *see generally Erwin v. U.S.*, No. 05-1698, 2006 WL 2660296, at *6 (D.D.C. Sept. 15, 2006) (providing a general discussion of the relaxed rules). "[E]ven to the extent that service may have been imperfect in this case, the Court affords [plaintiff], as a *pro se* plaintiff, some leniency in applying the rules for effecting service of process[.]" *Roland*, 2015 WL 8751050 at *3.

Thus, even though the Plaintiff's Return of Service only stated that a Summons was served, this Court gives the Plaintiff, a *pro se* party at the time, the benefit of the doubt that both the Summons and a copy of the Complaint were duly served. Once served, the defendant "'becomes a party officially, and is required to take action in that capacity' . . . even if the plaintiff fails timely to prove service by filing a server's affidavit or files a defective proof of service." *Mann v. Castiel*, 681 F.3d 368, 373 (D.C. Cir. 2012); *cf. Barnhardt v. District of Columbia*, 560 F.Supp.2d 15, 20 (D.D.C. 2008) (holding that process server's failure to check a box on Return of Service form was

---

[9] This Court's form AO 440, a "Summons in a Civil Action" (Rev. 06/12), does reference an attached Complaint on the first page, but the second page "Proof of Service," which presents a series of boxes to be check-marked by the process server depending on how service was made, mentions only service of "the summons" without specifically referencing any accompanying complaint.

a "technical oversight" that did not affect validity of service); *see* Fed. R. Civ. P. 4(l)(3) ("Failure to prove service does not affect the validity of service."). Therefore, even if the Return of Service in this case did not state that both the Summons and a copy of the Complaint were served, if Mr. Postell was served and he was an agent of Parkside, the Defendant had the obligation to appear before this Court nonetheless.

Because of the nature of the claims in this case - that service was not effective and the person allegedly served was neither an officer nor a director of Parkside - the Court held an evidentiary hearing to consider the evidence regarding these issues. In an attempt to rebut the Return of Service prepared by Kimberly Trent,[10] Defendant relied upon the Affidavit of Kenneth Postell that he was "not served with any documents or other instrument which relate in any way to th[is] lawsuit on September 15, 2001." (Affidavit of Kenneth Postell [34-1] ¶4.) Mr. Postell's testimony that he has never been served with legal process, except for Mr. Bond's subpoena, was consistent with his Affidavit. (March 2016 Testimony.) Mr. Postell did however acknowledge that the address noted in the Return of Service- 3727 Grant Pl, N.E.- was his address from 1994 to 2002. (Affidavit [34-1] ¶2.)

In direct contrast, Plaintiff Betty Williams testified that on the day that Mr. Postell was served, she noticed that he was at his house. Ms. Williams stated that she then contacted her daughter, Kimberly Trent, and asked if she would do her a favor by serving Mr. Postell with documents, in exchange for Ms. Williams filling up Ms. Trent's car with gas and buying her cigarettes. (March 2016 Testimony.) Ms. Williams further testified that she was in the car when Mr. Postell was served. (*Id.*)

---

[10] As noted during the evidentiary hearing, Ms. Trent is deceased.

Considering the exhibits and testimony that have been presented with regard to this Motion, this Court finds Ms. Williams' recollection of the events of September 15, 2001 to be more credible than Mr. Postell's recollection. Ms. Williams' testimony is bolstered by the contemporaneous Return of Service prepared by Ms. Kimberly Trent, under penalty of perjury, which alleges that Ms. Trent gave Mr. Postell the summons but he returned it to the windshield of her car.  *See Roland*, 2015 WL 8751050, at *2 ("A signed return of service . . . constitutes prima facie evidence of valid service, which can be overcome only be strong and convincing evidence.") (citations omitted). The Court thus concludes that Defendant has not satisfied its burden of proof regarding the issue of effective service and accordingly, the Motion to Set Aside the Judgment and Quash the Writ of Execution should be denied on this grounds.

### B. Was Mr. Postell an Agent of Parkside for Purpose of Service?

The second issue before this Court is whether Mr. Postell was an agent of Parkside at the time that service was effected.[11]  Defendant contends that "[a]lthough Mr. Postell served on the

---

[11] Throughout the course of the evidentiary hearing, Plaintiff repeatedly attempted to obtain information from Parkside to confirm the names of its officer/directors during the relevant period of time - September 2001 - even though Defendant bore the burden of demonstrating that Mr. Postell was not an agent or officer of Parkside in September 2001, and thus, service was defective and hence, the judgment was void. Parkside's registered agent [Benny Kass] testified that he did not personally recollect such names; such records were only retained by the registered agent for 7 years but the documents containing such names might have been sent to/retained by Parkside's management company.  The registered agent further noted that counsel might have this information although he had not searched for such information in his capacity as counsel. (January 2016 Testimony.)  Mr. Brian Kass, an attorney from the law firm representing Parkside, subsequently testified in his individual capacity and as custodian of records for the law firm.  He indicated that he had not taken any actions to comply with the Plaintiff's subpoena asking for information about the officers/ directors of Parkside and that such information might be attorney-client privileged. (March 2016 Testimony) This Court ordered Defendant to comply with Plaintiff's subpoena, as modified by the Court. (March 10, 2016 Docket Entry.) On March 24, 2016, Mr. Brian Kass filed an Affidavit stating that he (as custodian of records) had provided Plaintiff's counsel with all responsive documents that were not attorney-client privileged.  (Brian Kass Affidavit [52] ¶3.)

Board of Directors for Parkside (sometimes referred to herein as "the Board" or "the Parkside Board"), he was not on the Board of Directors in 2001, and thus not authorized, in any event, to accept service on behalf of Parkside." (Motion at 4 n.2)  *See* Affidavit of Kenneth Postell [34-1] ¶3 ("At various times I have served on the Board of Directors for the Parkside Townhomes Condominium Association, Inc. However, I was not a member of the Board of Directors in 2001.")

As evidence to refute this statement by Mr. Postell, Plaintiff presented two documents entitled "Two Year Report for Non-Profit Foreign and Domestic Corporations." (Plaintiff's Hearing Exhs. 1 and 2.) Plaintiff's Exhibit 1 (which was due on January 15, 2000 and is stamped February 22, 2000) lists Kenneth Postell, 3727 Grant Pl., N.E., as President of Parkside Townhomes Condominium Association, Inc. and Plaintiff's Exhibit 2 (which was due on January 15, 2002 and is not date stamped) states that the "Below Named Officers are the Board of Directors" and lists Kenneth Postell, 3727 Grant Pl., N.E., as a Director. (Plaintiff's Exhs. 1 & 2.) Exhibit 1 appears to have been signed by Kenneth Postell, Pres[ident], and Exhibit 2 appears to have been signed by Victor Booth, who is listed as President on that form. (Plaintiff's Exhs. 1 & 2.)

Mr. Postell testified that he served on the Board from mid-1995 through 2000, as president and vice-president, and he didn't remember exactly when he left the Board but he was not a member in 2002, or when service was allegedly made in September 2001. (November 2015 Testimony.) Mr. Postell did not recall or recognize Exhibit 1, although he noted that the signature might have been his, nor did he recognize Exhibit 2. (November 2015 Testimony.) Mr. Kass, Parkside's registered agent testified that with regard to Exhibits 1 and 2, they would have been signed by some officer of Parkside. (December 2015 Testimony.) Ms. Taylor testified that she thought Mr. Postell was president of the Parkside Board in 2000 and that Mr. Booth became

president at some point but she was not sure when.  (January 2016 Testimony.)   Mr. Postell subsequently testified that he was not a member of the Parkside Board in either 2001 or 2002 and that he had resigned as president because he was moving from his unit and he was "burned out." He further testified that he orally informed Bill Rhoten (management company representative) and Donald Washington (vice president of the Parkside Board), that he was resigning and he speculated that this conversation occurred at the beginning of 2001. He later testified that he lived in his unit in September 2001 and did not physically move until February or March of 2002.  (January 2016 Testimony.)

Mr. Postell thereafter testified that he did not recall the length of the term that persons elected to the Board served nor did he recall the time of year when annual meetings were held. Mr. Postell was asked to identify his signature on documents marked as Plaintiff's Exhibits A [Letter from Mr. Whitman to Mr. Mitek dated March 5, 1998] and Plaintiff's Exhibit B [Settlement Agreement, Mutual Release and Covenant Not to Sue], both purportedly signed by Mr. Postell in 1998.  Mr. Postell testified that the signature on Exhibit A did not appear to be his but the signature on Exhibit B looked like his signature. When he was asked about Plaintiff's Exhibit D [a compilation of November 15 and December 6, 2000 Board Meeting Minutes and January 17, 2001 Draft Meeting Minutes], he testified that he recalled being elected vice president of the Board and agreed that he was elected in December 2000, but that he stepped down in 2002, maybe late in 2001, and was not on the Board anymore. He again recalled telling either the president or vice president of the Board and William Rhoten that he was resigning although nothing was put in writing. He testified that he moved from the community in February 2002 but that he stepped down sometime in early 2001, by March 2001. Mr. Postell acknowledged that he was confused on the exact dates.  (March 2016 Testimony.)

Mr. Booth testified that he didn't recall if his position on the Board in 2000 was a two year term and he speculated that Board meetings may have been held quarterly.  Mr. Booth confirmed that he was treasurer in 2000 when Mr. Postell was president.  He stated that when Mr. Postell resigned from the Board, Mr. Postell told Mr. Booth, Donald Washington, and Willliam Rhoten privately in the evening after a Board meeting. Mr. Booth testified that there would have been an election to replace Postell but he did not recall such election. When asked when Mr. Postell left the Board, Mr. Booth guessed that it was maybe in the fall of 2001, although he later said that it might have been in 2000 or earlier in 2001.  He noted that the Meeting Minutes should reflect when Mr. Postell resigned and who succeeded him.  Mr. Booth further stated that "everyone" knew that Mr. Postell had informally resigned. (March 2016 Testimony.)

Ms. Williams testified that, to her knowledge, Mr. Postell was president of the Board at the time he was served and that's why he was served on behalf of Parkside.  (March 2016 Testimony.)

Plaintiff further submitted a copy of some e-mail he exchanged with William Rhoten, a management company representative during the period of time at issue. (Plaintiff's Memorandum is Opposition to Motion to Quash, Exh. 1 [E-mails between Plaintiff's counsel and William Rhoten] [47-1].)  Mr. Rhoten viewed the 2000 and 2002 Two-Year Reports and he acknowledged that the names and addresses of the Parkside Board members were written by him.  Mr. Rhoten did not recall if Kenneth Postell "went off the Board for a year" but from these documents, "he was definitely on the Board in 2000 and 2002." Mr. Rhoten recollected that the Association had elections every year and noted that the "information should be in the Board minutes or annual meeting minutes."  (E-mails [47-1].)

Weighing the evidence on the issue of whether or not Mr. Postell was authorized to accept service on behalf of Parkside, the Court notes that Mr. Postell was admittedly a member of the

Parkside Board for several years, including in 2000.  While Mr. Postell alleges that he orally resigned from the Board at some point and his resignation has been corroborated by Mr. Booth, there is nothing in writing to confirm the date of such resignation nor can either of them remember the timing of Mr. Postell's resignation, which was noted to be anywhere from sometime in 2000 to sometime in 2002.[12]  Furthermore, the documentary evidence in this case – reports that were filed with the District of Columbia- suggests that Mr. Postell was a member of the Board in both 2000 and 2002, or held himself out as such. Nor did Defendant proffer any documents to confirm the names of the members of the Board in September, 2001. In light of the record before this Court, the Court finds that Defendant has not demonstrated that Mr. Postell was not authorized to accept service of process on behalf of Parkside in September of 2001.  Accordingly, Defendant's Motion to Set Aside Judgment and Quash Writ of Execution should be denied on this grounds.


June 14, 2016                    _____/s/_____
                                ALAN KAY
                                UNITED STATES MAGISTRATE JUDGE

---

[12] Assuming that Mr. Postell did resign prior to September, 2001, there is no evidence that this information was disseminated to the Parkside homeowners.

12