UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
BETTY WILLIAMS,                     )
                                    )
    Plaintiff/Judgment Creditor,    )
v.                                  )
                                    )   Civil Action No. 01-1098 (AK)
MEL MARTINEZ, *et al.*,             )
                                    )
    Defendant/Judgment Debtor.      )
_____)

## **MEMORANDUM OPINION**

Pending before this Court is a Motion by Judgment Creditor Betty Williams ("Williams") for Examination of Judgment Debtor Parkside Townhomes Condominium Association ("Parkside"), in Aid of Execution ("Motion") [55], Parkside's Opposition to the Motion and Cross Motion to Quash Subpoenas (collectively referred to as "Cross-Motion") [58], Plaintiff's Opposition to the Cross-Motion and Reply to the Motion (collectively, "Williams' Opposition") [59/60], and Parkside's Reply to Williams' Opposition ("Parkside's Reply") [62]. Judgment Creditor Betty Williams moves this Court to order the current President, Secretary and Treasurer of Judgment Debtor Parkside Townhomes Condominium Association and its property manager, Benjamin Colbert ("Colbert"), to appear for examination pursuant to D.C. Super. Ct. Civ. R. 69-I and Fed. R. Civ. P. 64(a). Parkside moves to quash the subpoenas issued to the Parkside officers and Colbert. For the reasons set forth herein, this Court declines to quash the subpoenas and orders that the examination be permitted.

# **BACKGROUND**[1]

On May 21, 2001, Plaintiff Betty Williams filed a *pro se* Complaint [1] against Defendant Parkside, alleging that there were "numerous structural problems, including the roof, [and problems with the] exterior insulation and finish, and the appliances" in her unit within the Parkside's condominium association, where such units were constructed with funds from the United States Department of Housing and Urban Development ("HUD").  (Complaint [1] ¶¶2, 9.)[2] Plaintiff asserted that she had tried to get "the structural defects in her house . . . corrected" but that no action had been taken. (Complaint [1] ¶15.)[3] On September 18, 2001, Williams filed a Return of Service/Affidavit, which was allegedly executed on September 15, 2001 upon Kenneth Postell, an agent of Parkside. (Return of Service [2] at 4.)

Because Parkside never filed an answer or otherwise responded to Williams' Complaint, the Clerk's Office entered a Default [22] against Parkside on June 7, 2002.[4]  On May 12, 2003, Williams filed a Motion for Default Judgment [24] against Parkside. On August 26, 2003, Williams, through counsel,[5] participated in an evidentiary hearing regarding her Motion for

---

[1] This Background section reiterates much of the background stated in this Court's prior opinion denying Parkside's motion to set aside the default judgment and quash the writ of execution.
[2] Williams also named Mel Martinez, Secretary of the U.S. Housing and Urban Development ("HUD") as a Defendant in this case alleging violations of the National Housing Act, 12 U.S.C. §1701; Title VIII of the Civil Rights Act of 1968 (Fair Housing Act), 42 U.S.C. §3601, *et seq.*; the Fifth Amendment; and the Mandamus Act, 28 U.S.C. §1361. (Complaint [1] ¶¶1-2.) HUD's Motion to Dismiss the Complaint [20] was granted by the Court on June 25, 2002, on grounds that it was unopposed. (Order [23].)
[3] In Paragraph 13 of her Complaint, Williams described in more detail the problems that were noted by Home Inspectors from Sears Home Inspection Service and the District of Columbia Department of Consumer and Regulatory Affairs. (Complaint [1] ¶13.)
[4] A corrected Default [25] against Parkside was entered by the Clerk on July 22, 2003.
[5] Williams' prior counsel entered his appearance on August 26, 2003. (Attorney Appearance [26].)

Default Judgment and the Court ordered that Williams submit a memorandum on the relief sought and supplement her repair estimates within 30 days. *See* 8/26/03 Docket Entry.[6] On September 25, 2003, Williams filed an affidavit and attachment in response to the Court's Order. (Notice of Filing [27].)[7] The Court issued a Memorandum Order [28] on November 14, 2003, granting in part and denying in part Williams' request for a default judgment against Parkside, directing that Williams was entitled to a judgment totaling $65,910.00 and costs of $222.00. (Memorandum Order [28] at 6.)

Under District of Columbia law, "every final judgment . . . for the payment of money rendered in the [ ] United States District Court for the District of Columbia. . . is enforceable, by execution issued thereon, for a period of twelve years . . . ." D.C. Code Ann. §15-101 (West 2001). In this case, it was not until October 19, 2015, after Williams retained new counsel, when she began applying to the Court for writs of execution and attachment on her judgment.[8] According to Williams:

> Plaintiff's Writ as to Defendant Parkside was issued on October 19, 2015. Doc. No. 30. The October 19 Writ was returned executed on October 21, 2015. Doc. No. 31. Other writs were issued by this Court on October 28, 2015, November 6, 2015 and November 9, 2015. Doc. Nos. 32 and 36. Writs issued to M&T Bank and SunTrust Bank were returned executed on November 10, 2015 [Doc. No. 37.] A Writ dated November 6, 2015 issued to Defendant Parkside via its agent Metropolis Condominium Management was returned executed on November 10, 2015 as well. Doc. No. 39, p.4.

---

[6] Williams' home inspection reports from Sears Home Inspection Services and the District of Columbia Department of Consumer and Regulatory Affairs, submitted in support of her motion for default judgment, indicated "numerous serious defects in the heating and cooling systems, which could lead to carbon monoxide poisoning, fire, or an explosion" and "a number of serious structural problems, including water seepage and damage resulting therefrom." (11/14/03 Memorandum Order [28] at 3 n.3.) Williams also submitted an inspection report from Home Survey Company, Inc. a licensed HUD contractor, which estimated the cost of doing some of the home repairs. (*Id.* at 3-4.)

[7] Williams submitted a home inspection report from Kendria Construction Company, which provided an estimated cost for repairs. (11/14/03 Memorandum Order at 4-5.)

[8] On September 24, 2015, Johnnie D. Bond, Jr. entered his appearance as counsel for Plaintiff.

(Plaintiff's Opposition to Cross-Motion at 2.)

Williams' October 19, 2015 Writ was personally served on Anthony Champ, Esq., on October 21, 2015, at the law office of Kass, Mitek & Kass, PLLC, at 1050 17th Street, N.W., Washington, D.C. *See* Process Receipt and Return [31]. According to testimony by Benny Kass during the evidentiary hearing on Parkside's motion to set aside the default judgment, the firm of Kass, Mitek & Kass has been representing Parkside for a number of years and Parkside's registered agent, Benny Kass, is one of the firm's attorneys.[9] Williams also arranged for service of writs on representatives of SunTrust Bank and M&T Bank and on Metropolis, the management agent for Parkside. *See* Process Receipt and Return [37]. Metropolis, through Benjamin Colbert, filed a response to the Writ of Attachment indicating that the management agent "help[s] manage the Association's funds[;] [h]owever the funds are within the name of Parkside Townhomes, and per our agreement with the Board, we may not authorize any movement or holding of money over $1,000." (Metropolis Response [39] at 1.)

On November 6, 2015, Parkside filed a Motion to Set Aside the Default Judgment and Quash Writ of Execution [34], asserting that:

> On June 7, 2002, the Clerk of this Court filed an entry of default as to Parkside. On November 14, 2003, this Court entered default judgment against Parkside in the amount of $65,910.00, plus full costs [ ]. Plaintiff then waited almost twelve years to take any action on the judgment. It was not until Plaintiff's counsel issued a writ of execution in October of 2015 [the writ that was served on Anthony Champ, Esq.] that Parkside became aware of these proceedings. Contrary to the representations in the Returns of Service, Parkside was never served [with notice of the underlying lawsuit], via Kenneth Postell. . . . Consequently, Parkside was not afforded an opportunity to respond to and defend against the claims asserted in this lawsuit.

---

[9] Williams attempted to personally serve a writ on attorney Benny Kass, at Kass, Mitek & Kass, but that writ was returned unexecuted. *See* Process Receipt and Return [38].

(Motion to Set Aside Default and Quash Writ of Execution [34] at 4.) Parkside accordingly alleged that the default judgment should be set aside because Mr. Kenneth Postell was not served with the Summons and Complaint and further, he was not an Officer/Director of Parkside at the time of such alleged service. *See* Affidavit of Kenneth Postell ("Postell") [34-1].  This Court held an evidentiary hearing with regard to Parkside's Motion [34], commencing on November 23, 2015, continuing on December 14, 2015 and January 12, 2016, and terminating on March 10, 2016.[10] During that lengthy evidentiary hearing, the following witnesses with information relevant to this case testified: Kenneth Postell (former member of the Board of Directors of Parkside); Benny Kass, Esq. (attorney and registered agent for Parkside); Wanda Taylor (Secretary of the Board of Directors of Parkside); Benjamin Colbert (Metropolis representative); Brian Kass, Esq. (attorney and custodian of records of the law firm representing Parkside); Victor Booth (former member of the Board of Directors for Parkside); and Betty Williams (Plaintiff). Williams and Parkside both submitted exhibits which were entered into evidence. On April 27, 2016, the Court convened a telephone status conference to inquire if the parties wanted to raise any additional issues but neither party requested the opportunity to do so.

On June 14, 2016, this Court issued a Memorandum Opinion [53] and Order [54] denying Parkside's Motion to Set Aside the Default Judgment, concluding that Williams' testimony

---

[10] As noted in this Court's June 14, 2016 Memorandum Opinion [53], the evidentiary hearing was protracted in part to permit Plaintiff to try to obtain information from Parkside regarding the names of its officer/directors in September, 2001, during the time when service was effected by Williams. Because Parkside would not voluntarily search for/produce such information, Williams had to subpoena several individuals, which resulted in these witnesses testifying at the evidentiary hearing. Eventually, Williams issued a subpoena *duces tecum* to the custodian of records at Kass, Mitek & Kass, and that subpoena was upheld in part by this Court.  *See* [53] at 8, n.11; *see also* March 9, 2016 Memorandum Opinion on Motion to Quash Subpoenas [48], Order [49], and March 10, 2016 Minute Order (directing compliance with subpoena).

regarding service, which was bolstered by the process server's affidavit, was more credible than Postell's recollection of events, and further, the uncontradicted documentary evidence (produced by Williams) indicated that Postell was either an officer/director at the time of service or held himself out as such. *See* June 14, 2016 Memorandum Opinion and Order.[11]

Parkside did not appeal from this Court's Memorandum Opinion and Order. On July 12, 2016, Williams filed the instant Motion for Examination of Judgment Debtor in Aid of Enforcement, requesting that Parkside produce information about its bank accounts and real and personal property, and that certain officers of Parkside (along with Mr. Colbert) appear for examination pursuant to D.C. Super. Ct. Civ. R. 69-I and Fed. R. Civ. P. 64(a). On July 26, 2016, Parkside filed its Opposition to the Motion and moved to quash the subpoenas issued to Parkside officers and Colbert.[12]

## LEGAL STANDARD

Federal Rule of Civil Procedure 69 provides *inter alia* that a "money judgment is enforced by a writ of execution, unless the court directs otherwise." Fed. R. Civ. P. 69(a)(1). The "procedure on execution – and in proceedings supplementary to and in aid of judgment of execution- must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). Furthermore, the "judgment creditor . . . may obtain discovery from any person - including the judgment debtor - as provided

---

[11] Williams notes that on June 21, 2016, upon inquiry, Parkside's counsel indicated that Parkside "has not made any decisions one way or another on this matter" [the denial of Parkside's motion to set aside default judgment] and he acknowledged that writs had been served but noted that "no funds or personal property had been seized by the Marshals. (Motion [55], Exh. 1 (e-mail exchange between counsel).)

[12] According to Parkside, "[o]n June 30, 2016, counsel for Williams issued subpoenas to the President, Secretary and Treasurer of Parkside, along with Benjamin Colbert." (Opposition at 4.)

in these rules or by the procedure of the state where the court is located." Fed. R. Civ. P. 69(a)(2).  D.C. Super. Ct. Civ. R. 69-I states as follows:

> (a) Discovery in General.  All discovery procedures authorized by Rule 26-37 are available to the judgment creditor in the manner prescribed by those rules, except that a subpoena ad testificandum addressed to a person other that the judgment debtor and a subpoena duces tecum shall issue only upon order of the court. The first ad testificandum or notice of deposition addressed to the judgment debtor may issue without court order, but any subsequent subpoena or notice so addressed shall issue only upon order of the court. Nothing contained herein shall be construed to require that a party to the action be paid a witness fee for attendance.
>
> (B) Oral Examination in Court. The plaintiff may summon the defendant and, upon leave of court, any other person to appear in court on a date certain and submit to oral examination respecting execution of any judgment rendered. Any person so summoned may, upon leave of Court, be required to produce papers, records, or other documents at the examination.  * * *

D.C. Super. Ct. Civ. R. 69-I.

Pursuant to Fed. R. Civ. P. 64 (Seizing a Person or Property), "[a]t the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing . . . property to secure satisfaction of a potential judgment [b]ut a federal statute governs to the extent it applies." Fed. R .Civ. P. 64(a).  D.C. Super. Ct. Civ. R. 64 lists these remedies as "arrest, attachment, garnishment, replevin, sequestration, and other corresponding or equivalent remedies, however designated."  D.C. Superior Court Rule (Civil) 64.[13]

---

[13] Parkside's property management company was served with a writ of attachment and interrogatories, which were answered by Mr. Colbert "within ten days after service" although the answers were incomplete as they did not indicate whether Metropolis was currently holding any Parkside funds and they were not "made under the penalties of perjury" as required by D.C. Code Section 16-552(b).

7

## **ANALYSIS**

In the instant case, judgment was entered by this Court on November 14, 2003, and according to Parkside, the "judgment expired and ceased to have any effect on November 14, 2015." (Opposition at 6.)[14] Parkside asserts that Williams' judgment has expired and cannot be revived, relying on D.C. Code §15-101. (Opposition at 4-6.) Section 15-101(a) states that, except as provided in Section 15-101(b), a final judgment for the payment of money rendered in either the District of Columba Superior Court or the United States District Court for the District of Columbia "is enforceable, by execution issued thereon, for the period of 12 years only from the date when an execution might first be issued thereon, or from the date of the last order of revival thereof." D.C. Code Ann. §15-101(a) (West 2001). Parkside briefly discusses the legislative history of this statutory provision, noting that that it may be traced back to chapter 23 of the 1715 Maryland Act, which was "consistently characterized as a 'statute of limitations of actions' upon judgments in the District of Columbia." (Opposition at 5) (citing *Mann v. Cooper*, 2 App. D.C. 226, 234 (1894); *Galt v. Todd*, 5 App. D.C. 350, 353-55 (1895)). *See also Mayo v. Mayo*, 508 A.2d 114, 117 (D.C. 1986) ("In the absence of an interpretation to the contrary, we may rely upon this older version of the statute, and the interpretation attached thereto, to conclude that the current D.C. Code §15-101 is a statute of limitation.")

Williams counters Parkside's argument by citing the plain language of D.C. Code §15-101(b) whereby at the end of the 12-year period addressed in subsection (a), "the judgment or decree shall cease to have any operation or effect [ ] *except in the case of a proceeding that may*

---

[14] *But see* Fed. R. Civ. P. 62 (a) (providing that no execution may issue on a judgment nor it be enforced until 14 days have passed following its entry). The 14 day period replaced the previous 10 day period. Fed. R. Civ. P. 62 advisory committee's note to 2009 Amendment.

*be then pending for the enforcement of the judgment or decree. . . .*" D.C. Code Ann. §15-101(b) (West 2001) (emphasis added). Williams notes that Fed. R. Civ. P. 69 provides in relevant part that "[a] money judgment is enforced by a writ of execution, unless the court directs otherwise." Fed.R.Civ.P, 69(a)(1). Accordingly, Plaintiff's writs fall under the subsection (b) exception and are fully enforceable against Defendant Parkside. (Williams' Opposition at 3.) Furthermore, "Plaintiff's Motion for Oral Examination is supplementary to and filed in aid of the currently pending writs of execution." (*Id.*)

Parkside responds to Williams' reliance on Section 15-101(b) by arguing that it was not properly served with a writ of execution (Parkside's Reply at 2-3), or alternatively the writs are invalid because a writ of execution on a judgment must be issued within three years after "it first might have been issued under applicable provisions of law or rules of court." (Parkside's Reply at 3-4.) *See* D.C. Code Ann. §15-302 (a)(2) (West 2001). *See also* D.C. Code Ann. §15-305 (West 2001) ("A writ of execution not issued within the time allowed therefor, may not be issued until the judgment has been revived. . . .")[15]

Parkside asserts that it has "never been served with a writ of execution" even though Parkside moved this Court on November 6, 2015 to set aside the default judgment and quash the writ of execution [issued in October of 2015] without arguing any defect in service of the writ. Parkside proffers no explanation for failing to bring this (alleged) defect in service of process of the writ to the Court's attention earlier and accordingly, any defect in service has been waived.[16]

---

[15] Parkside asserts that the judgment was not revived through a proper motion. (Parkside's Reply at 3.)

[16] Parkside did challenge the underlying default judgment on grounds that Mr. Kenneth Postell was not served with the summons and complaint or that service was not effective because he was not an officer or director of Parkside and those matters were addressed during the evidentiary hearing.

9

In *Democratic Republic of Congo v. FG Hemisphere Associates, LLC,* 508 F.3d 1062 (D.C. Cir. 2007), a case involving a challenge to the underlying default judgments for want of personal jurisidiction based on a claim of defective service, the Court of Appeals found waiver under the circumstances where:

> [Appellee] also assert[ed] that [Appellant's] long silence on the matter, from its first appearance and participation in this litigation in May 2005 until its June 2006 motion to vacate, waived any objection to the district court's personal jurisdiction over the [Appellant]. . . Rule 12(g) and Rule 12(h)(1) of the Federal Rules of Civil Procedure provide that the defense of lack of jurisdiction, among others, is waived by its omission from motions asserting defenses under Rule 12 or a responsive pleading.  In a case such as this, where the defendant's default has removed any occasion for these conventional opening moves, the rule obviously cannot be applied literally.  But courts have applied its rationale – that defendants should raise such preliminary matters before the court's and the parties' time is consumed in struggle over the substance of the suit – where a defendant has engaged in extensive post-default litigation without suggesting an infirmity in personal jurisdiction.

*Id.* at 1064. The same rationale applies here where Parkside filed a motion challenging the writ of execution in November 2015 but did not raise an objection to service [of the writ] until Parkside filed its Reply in August 2016.

Nor did Parkside previously assert that the writ of execution was barred because it had not been timely issued. Furthermore, Parkside does not argue that the writ of attachment served on Parkside's management agent was untimely issued.[17]  In the District of Columbia, a party may seek to enforce a judgment not only by writ of execution, but also by writ of garnishment, the latter satisfying indebtedness by garnishing credits of the judgment debtor in the hands of a third party.  D.C. Code Ann. §16-556 (West 2001); *Consumers United Ins. Co. v. Smith*, 644

---

[17] Parkside's challenge to that writ rests on its statement that "at no point in its answer did Metropolis claim to have accepted service on behalf of Parkside, be authorized to do so or to be answering on behalf of Parkside." (Parkside's Reply at 2-3.)

A.2d 1328, 1351-52 (D.C. 1994); *United States v. Thornton*, 672.F.2d 101, 105 (D.C. Cir. 1982). "Attachment may be issued *at any time during the life of the judgment*, without issuing an order reviving the judgment previously issued." D.C. Code. Ann. §16-543 (West 2001) (emphasis added). *See also* D.C. Code. Ann. §16-546 ("An attachment may be levied upon credits of the defendant, in the hands of a garnishee, by serving the garnishee with a copy of the writ of attachment and of the interrogatories accompanying the writ, and a notice that any property or credits of the defendant in his hands are seized by virtue of the attachment.") Furthermore, "[i]n addition to the answers to written interrogatories required of him, the garnishee may, on motion, be required to appear in court and be examined orally, under oath, touching any property or credits of the defendant in his hands." D.C. Code Ann. §16-552(b) (West 2001).

Even assuming *arguendo* that none of the writs issued by Parkside within the twelve year period satisfy the exception under D.C. Code §15-101(b), this Court finds that Parkside has waived any statute of limitations defense by not timely raising it despite being presented with numerous opportunities for doing so. *See National Bank of Washington v. Carr*, 829 A.2d 942, 943 (D.C. Court of Appeals 2003) ("We have held that the twelve-year period in D.C. Code §15-101 is not jurisdictional in nature, but a statute of limitations that, as an affirmative defense, is waived if not timely asserted.) Parkside fully participated in a four-part evidentiary hearing on its motion during which its registered agent/attorney, Secretary, property manager, various former officers, and the custodian of records at the law firm representing Parkside all testified; yet, at no time did Parkside raise the affirmative defense that Williams' claims were barred by the twelve year statute of limitations.[18] To permit reliance on the statute of limitations at this late

---

[18] Nor did Parkside contest service of the October 2015 writ or assert that the writs of execution were time barred.

date would negate this Court's ruling denying Parkside's motion to set aside the default and quash the writ and make a mockery of the judicial process. Parkside's strategy of litigating this case by dragging its feet during the evidentiary hearing and its last-minute raising of claims of ineffective service-of-process and statutes of limitation continue to cause a significant waste of this Court's and the parties' resources. Accordingly, this Court grants Judgment Creditor's Motion for Examination of Judgment Debtor in Aid of Enforcement [55] and denies Parkside's Cross-Motion to Quash the subpoenas [58].  A separate Order accompanies this Memorandum Opinion.

August 22, 2016                                          _____/s/_____
                                                                        ALAN KAY
                                                                        UNITED STATES MAGISTRATE JUDGE